**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Steven J. Roy

    v.                                   Civil No. 12-cv-303-JD

William Wrenn at al.[1]


**REPORT AND RECOMMENDATION**


Before the court is pro se prisoner Steven J. Roy's amended complaint (doc. no. 11),[2] and a motion for extraordinary handling of Roy's pleadings (doc. no. 4). The district judge has referred the motion (doc. no. 4) to the magistrate judge for recommended disposition. See Order (doc. no. 9).[3] Because Roy is proceeding in forma pauperis, the matter is before the court for preliminary review, see 28 U.S.C. §§ 1915(e)(2) and 1915A;

---

[1] Roy has named as defendants New Hampshire Department of Corrections ("DOC") Commissioner William Wrenn, New Hampshire State Prison ("NHSP") Warden Richard Gerry, and NHSP Major Jon Fouts.

[2] The original complaint (doc. no. 1) with exhibits, the amended complaint (doc. no. 11), and exhibits filed as addenda to the complaint (doc. no. 16), taken together, are deemed to be the "complaint" for all purposes in this action.

[3] Also pending is a motion for preliminary injunction (doc. no. 3), a report and recommendation recommending denial of that motion (doc. no. 10), and a motion to reconsider (doc. no. 14), which is denied in an order issued on this date. The instant report and recommendation provides a supplemental basis upon which this court should deny the motion for preliminary injunction (doc. no. 3).

United States District Court District of New Hampshire Local
Rule ("LR") 4.3(d)(2).

### Preliminary Review Standard

The magistrate judge conducts a preliminary review of all
inmate complaints filed in forma pauperis.  See LR 4.3(d)(2);
see also 28 U.S.C. §§ 1915(e)(2) and 1915A.  The magistrate
judge may direct service of the complaint, or, as appropriate,
recommend to the district judge that one or more claims be
dismissed if:  the court lacks subject matter jurisdiction, a
defendant is immune from the relief sought, the pleading fails
to state a claim upon which relief may be granted, the
allegation of poverty is untrue, or the action is frivolous or
malicious.  See 28 U.S.C. §§ 1915(e)(2) and 1915A(b); LR
4.3(d)(2).

In determining whether a pro se complaint states a claim,
the court must construe the complaint liberally.  See Erickson
v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  To survive
preliminary review, the complaint must contain "sufficient
factual matter, accepted as true, to 'state a claim to relief
that is plausible on its face.'"  See Ashcroft v. Iqbal, 556
U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007)); Sepúlveda-Villarini v. Dep't of Educ.,
628 F.3d 25, 29 (1st Cir. 2010).

**Background**

I.   Related Cases

Roy has previously filed four cases in this court, summarized below, that provide relevant context for claims asserted in this case:

- Roy v. Prison Warden, No. 95-cv-0084-JM (D.N.H. filed Feb. 15, 1995) ("Roy I").  Roy sued prison officials for seizing computer printouts relating to a business he owned before his incarceration.  Prison officials mistook the printouts for evidence of gambling, and Roy was convicted of a disciplinary charge of illegal gambling.  Roy I settled. Roy cites the facts of Roy I as the genesis of a "computer misuse rumor" that he alleges continues to impair unfairly his prison job prospects and computer access in the prison.

- Roy v. Stanley, No. 02-cv-555-JD (D.N.H. filed Dec. 4, 2002) ("Roy II").  Roy sued prison officials for banning his use of prison computers.  The court determined that the ban resulted from a prison official's mistake about Roy's disciplinary history, granted defendants' motion for summary judgment, and closed the case.  See Roy II, 2005 DNH 131, 2005 WL 2290276 (D.N.H. Sept. 20, 2005) ("September 2005 Order").  In granting the motion for summary judgment, however, the court admonished prison officials for "shoddy" supervision and management.  See 2005 WL 2290276, at *8.  Pointing to that admonition, Roy now asserts that prison officials are in contempt of the September 2005 Order.

- Roy v. N.H. State Prison, No. 07-cv-353-PB (D.N.H. filed Oct. 25, 2007) ("Roy III").  Roy sued prison officials in 2007, asserting inadequate dental care and retaliation claims.  Roy III settled after Roy obtained a preliminary injunction.  See Roy III, 2008 WL 2795868 (D.N.H. July 18, 2008).  Roy now alleges that parallels between Roy III and the facts underlying the instant action show that the prison has a "modus operandi" of leveling retaliatory disciplinary charges against him, in violation of his First Amendment rights.

- <u>Roy v. N.H. Dep't of Corrs.</u>, No. 09-cv-075-SM (D.N.H. filed Mar. 6, 2009) ("<u>Roy IV</u>").  Roy sued prison officials in 2009, alleging inadequate dental care.  <u>Roy IV</u> settled.  As a term of that settlement, the warden agreed to draft a memo addressing the computer misuse rumor.  Roy asserts in the instant case that the warden's memo, dated January 7, 2010, does not satisfy the September 2005 Order.

II.  <u>North Yard and Job Denials</u>

The pertinent allegations relating to Roy's claims in the instant case are as follows.  On February 22, 2012, a North Yard officer performing a routine pat-down found a thumbnail-sized circuit board with a radio/cassette switch in Roy's pocket.  Roy maintains that the fragment was "debris" from his housing unit.  Roy agreed to plead guilty to a disciplinary report presented by Sgt. Fontaine, the North Yard gatehouse sergeant, because, Roy asserts, the sergeant offered to impose no sanctions other than 90 days reduced pay status, and the loss of Roy's North Yard job.  Roy alleges that, at that time, Fontaine indicated that he would not object to Roy being rehired.

The next day, February 23, 2012, Roy discussed with NHSP Lt. Brown his concern that Sgt. Fontaine had deviated from protocol by engaging in plea negotiations, and Lt. Brown promised to look into the matter.  On March 1, 2012, Roy submitted an inquiry to Maj. Fouts regarding the incident.  Lt. Brown responded in writing, stating that Roy's guilty plea and

the infraction were valid, and that the gatehouse sergeant's failure to follow "best practice[s]" had been addressed.

At the end of May 2012, Roy inquired with the education center about two clerk positions outside of the North Yard. Roy was told he could not be hired. Roy alleges that another inmate overheard a staff member say that Roy was not hired due to "problems" Roy had on "education computers in the past." Roy cites that comment, and questions guards have had about Roy's access to a computer in his unit, as proof that rumors still unfairly and negatively impact his prison job prospects.

Roy reapplied for his old job. On June 4, 2012, Maj. Fouts denied Roy's job request, and determined that Roy was subject to a two-year restriction on North Yard jobs. On June 8, 2012, in response to Roy's inquiry, Fouts explained that the ban was imposed because Roy had received a disciplinary report on February 22, 2012, relating to contraband that "did/or could have" come from the North Yard, and that Sgt. Fontaine, contrary to what he had previously indicated, said he would prefer not to have Roy in the North Yard at that time.

On June 12, 2012, Roy filed a grievance with Warden Richard Gerry, citing his success in litigating a preliminary injunction in Roy III, and complaining of the persistence of computer misuse rumors, the denial of his job change request, the two-

year North Yard ban, Sgt. Fontaine's changed position about Roy returning to the North Yard, and departures from prison policies with respect to the disciplinary charge and plea negotiations. Gerry responded on July 18, 2012, stating that the North Yard ban resulted from the February 2012 disciplinary report, and that incidents from prior years were not factors.  Noting that Roy was the target of an ongoing disciplinary investigation, Gerry expressly declined to resolve Roy's appeal about the North Yard job denial, and invited Roy to resubmit an appeal after the conclusion of the investigation.  Roy appealed the denial of his grievance to the office of DOC Commissioner William Wrenn, which denied the appeal on July 24, 2012.

III. <u>Investigation and Transfers</u>

A.   <u>SHU</u>

Roy was scheduled to be transferred to the NHSP's Hancock Building in late June 2012, but the warden cancelled that transfer.  On July 3, 2012, while Roy's grievance was pending before the warden, prison officials transferred Roy to administrative segregation in the NHSP's Special Housing Unit ("SHU").  Roy remained in SHU for almost seven weeks.  Prison officials told Roy that the transfer occurred at the onset of an investigation into allegations that Roy had asked two inmates to engage in a sex act.  Thereafter, on August 2, 2012, Roy was

formally charged with propositioning two inmates "several times during the months of May and June 2012."  Roy alleges that, while in SHU, he endured extreme heat, frequent "floods" of raw sewage, limited library access, and restricted access to his legal papers.

At an August 2012 disciplinary hearing on the propositioning charges, Roy argued that he could not defend against the charge without knowing "who, when, and where."  The hearing officer explained that the names of Roy's accusers were withheld to shield them from retaliation.  The hearing officer found Roy guilty.  In so doing, the hearing officer found indicia of reliability in the confidential sources' accounts, both because there were "multiple CI statements" and Roy admitted that he had written about the sex act on his word processor.  Maj. Fouts, Gerry, and Wrenn, in turn, each reviewed and upheld Roy's conviction on the propositioning charges.


B.   NCF

On August 20, 2012, prison officials transferred Roy to the Northern New Hampshire Correctional Facility ("NCF").  Roy alleges that the move resulted in the loss or damage of personal property, including 1000 pages of legal work.

Roy asserts that the NCF general population is dangerous for him because of his public stance against gang-banging, and his close affiliation with an outspoken ex-gang member.  Roy states that although he was transferred into a "safe mental health environment" at NCF, he fears that a transfer to the NCF general population will occur when a bed becomes available.

Roy asserts that he has continued to suffer harassment and retaliation at NCF, including delays in providing storage for paperwork in his cell and computer issues.  On October 9, 2012, Roy received notice that "Investigations" had banned his access to NCF computers.  Roy was told on October 12 that the computer ban was imposed solely because he was on a list of people who had worked in the North Yard, and prison investigators were looking into an incident of computer hacking in the North Yard. Although Roy was interviewed at NCF concerning that incident, Roy was assured that he was not the target of the investigation.

IV.  Procedural History and Claims

Roy filed his original complaint (doc. no. 1) in this action on August 7, 2012, along with a motion for extraordinary handling of the pleadings (doc. no. 4) and a motion for a preliminary injunction (doc. no. 3).  Those motions were referred to the magistrate judge for proposed findings and recommendations as to disposition.  See Order (doc. no. 9).  On

8

August 30, 2012, the magistrate judge issued a report and

recommendation (doc. no. 10), recommending that the motion for

preliminary injunction (doc. no. 3) be denied.  Thereafter, Roy

filed his amended complaint (doc. no. 11) and a motion to

reconsider the August 30 report and recommendation (doc. no.

14).[4]

In this case, Roy has asserted the following claims[5]:

1.   Defendants are in contempt of the September 2005 order
in Roy II.

2.   Defendants violated Roy's First Amendment rights by
taking the following actions, in response to Roy's
grievances and lawsuits: (a) imposing a two-year ban on
Roy's access to the NHSP North Yard; (b) denying his
education center job application; (c) scheduling his
transfer to the Hancock Building; (d) detaining him in SHU
and instituting the August 2012 disciplinary proceedings;
(e) transferring him to NCF; and (f) harassing him at NCF.

3.   Defendants violated Roy's Fourteenth Amendment right
to due process by subjecting Roy to unfair procedures and
irregularities in disciplinary proceedings, including: (a)
the plea negotiations conducted by a gatehouse sergeant;

---

[4]In an order issued on this date, the court has denied the
motion to reconsider, without prejudice to refiling if the
district judge declines to accept either the instant report and
recommendation or the August 30 report and recommendation.

[5]Roy included in the original complaint (doc. no. 1) a claim
of unjust enrichment and/or lost wages, based on his having
worked without pay developing software for the prison.  As Roy
has omitted that count from the amended complaint (doc. no. 11),
the court concludes that Roy has abandoned the claim.  The court
also infers from Roy's failure to cite the Eighth Amendment and
failure to allege deliberate indifference that Roy does not
intend to assert an Eighth Amendment conditions of confinement
claim in this case.

and (b) the denial of access to the names of Roy's accusers.

4.    Defendants violated Roy's Fourteenth Amendment right to due process by sanctioning Roy in reliance on false rumors.

5.    Defendants violated Roy's Fourteenth Amendment right to due process by failing to resolve Roy's grievances.

6.    Defendants are liable to Roy under state law for: (a) negligently or intentionally exposing Roy to unhealthy and/or unsafe conditions in SHU and at NCF; (b) intentionally or negligently inflicting emotional distress upon Roy with respect to the August 2012 disciplinary report, and by allowing prison staff members to review the explicit details of the charge; and (c) negligently or intentionally causing Roy's legal materials and other personal property to be "rifled through," lost, or damaged, when Roy was transferred to NCF.

Discussion

I.    <u>Preliminary Review</u>

    A.    <u>Contempt</u>

Roy asserts that prison officials should be held in contempt for failing to comply with the September 2005 Order in <u>Roy II</u>.  The pertinent part of the underlying order is in the nature of an admonition, not a mandate, and is part of an order granting summary judgment and directing closure of the case.[6]

_____

    [6]The <u>Roy II</u> order states, in pertinent part:

    [T]he entire issue of the computer ban arises from a mistake that could easily have been prevented if prison supervisors had communicated with their successors and subordinates about the settlement of Roy's first lawsuit.

The order sets no deadlines, and threatens no sanctions for noncompliance. Cf. SEC v. Hyatt, 621 F.3d 687, 692 (7th Cir. 2010) (to find contempt, underlying order must be unequivocal). By its terms, the September 2005 order resolves the underlying controversy without granting Roy relief or providing for ongoing court supervision. See 11A Chas. A. Wright, Arthur R. Miller, et al., Fed. Prac. & Proc. Civ. § 2960 (2d ed.) (termination of underlying controversy moots contempt proceeding). For these reasons, the court should dismiss Roy's contempt claim.

B.   Retaliation (Claim 2)

The First Amendment shields prisoners from retaliation in response to their protected speech, Ortiz v. Jordan, 131 S. Ct. 884, 893 (2011) (citing Crawford-El v. Britton, 523 U.S. 574, 592 (1998)), including adverse actions undertaken to deter an inmate from filing grievances and lawsuits. See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011), cert. denied, 132 S. Ct.

---

Prison management and discipline should not be based on mistaken assumptions, unfounded rumors, and gossip. To avoid continued problems arising from the circumstances of this case, the prison is put on notice that it must correct the disciplinary report on Roy pertaining to his possession of computer printouts that were mistaken for gambling activity and inform all prison staff of that correction and the prison's obligations under the settlement of Roy's first lawsuit. . . .

Roy II, 2005 WL 2290276, at *8.

1105 (2012).  Roy claims that the following acts violated his
First Amendment rights: (a) the two-year ban on Roy's access to
the North Yard; (b) the denial of Roy's education center job
applications; (c) the scheduled transfer to the Hancock
Building; (d) the transfer to SHU and the August 2012
disciplinary proceeding; (e) the transfer to NCF; and (f)
harassment at NCF.

To state an actionable retaliation claim, Roy must allege:
(1) the conduct which led to the retaliation was protected by
the First Amendment; (2) some adverse action at the hands of the
prison officials; and (3) a causal link between the exercise of
Roy's First Amendment rights and the adverse action.  See id.
To state an actionable retaliation claim, Roy must show that the
alleged adverse actions are capable of deterring an inmate of
ordinary firmness from exercising his First Amendment rights.
See Starr v. Dube, 334 F. App'x 341, 343 (1st Cir. 2009).

### 1.  North Yard Ban and Job Denial

Roy claims that Maj. Fouts, in retaliation for Roy's filing
lawsuits and grievances, imposed a two-year ban on Roy's access
to North Yard jobs on June 4, 2012, and denied Roy's request for
reinstatement in his old North Yard job.  Roy has asserted, in
support of his retaliation claim, that he was treated less
favorably than other inmates charged with removing dangerous

items from their workplaces.  That allegation alone, however,

does not give rise to a reasonable inference of a retaliatory

motive targeting Roy's status as a grievance or lawsuit filer.

Roy has failed to show that he and those inmates were similarly

situated, with Roy's status as a grievance and lawsuit filer

being the distinguishing factor.  Roy has thus failed to allege

facts that would give rise to a reasonable inference that any

alleged action against Roy resulted from retaliatory intent.

Roy also attempts to make much of the fact that Fouts

imposed the two-year ban and denied the job change request three

months after Roy pleaded guilty to the disciplinary report,

implying that the two-year ban was a post hoc, illicit sanction,

driven by Fouts's animus based on Roy's First Amendment

activity.  The complaint indicates, however, that Fouts was

involved in a security review of Roy's application for a North

Yard job in late May/early June 2012, pursuant to NHSP Policy

and Procedure Directive ("PPD") 7.15.[7]  The security review

required by PPD 7.15 provides a legitimate basis for the timing

of the June 4, 2012, action, and a non-retaliatory rationale for

---

[7]PPD 7.15 states that inmates with a history of possession
of contraband ("drugs, weapons, and dangerous materials") are
subjected to two-year bans on access to North Yard jobs, while
inmates with B-level disciplinary records are not subject to any
restrictions.  See PPD 7.15(IV)(E) and Attachment E.  Roy
contends that Maj. Fouts erred in applying the PPD 7.15 criteria
to him.  The court makes no finding in that regard.

Fouts' action.  Because Roy has thus failed to plead facts
showing the requisite causal link between his First Amendment
activity and the adverse acts of banning him from the North Yard
for two years and denying Roy his previous job, the court should
dismiss the retaliation claim arising out of those acts.

### 2.   SHU Detention and Disciplinary Proceedings

Roy alleges that his detention in SHU for seven weeks,
beginning on July 3, 2012, and the disciplinary proceeding that
occurred in August 2012, were retaliatory for Roy's grievances
and lawsuits.  Prison officials cited procedures contained in
PPD 5.19, as the reason for Roy's SHU detention and the
disciplinary proceedings.  Relevant prison policies authorize
the transfer or segregation of inmates who are under
investigation for sexual offenses, including sexual
solicitation.  See, e.g., PPD 5.19(V)(F) (authorizing immediate
temporary housing change).  Roy's detention in SHU occurred
while the prison investigated and prosecuted disciplinary
charges that Roy had engaged in sexual solicitation.

Roy contends that similarities between the August 2012
disciplinary proceedings, and certain proceedings in Roy III,
demonstrate that defendants have retaliated against Roy.  In Roy
III, the court determined that Roy had showed a substantial
likelihood of prevailing on the merits of his retaliation claim,

as to certain disciplinary proceedings, because the court
inferred a retaliatory motive where prison officials failed to
follow established disciplinary procedures, to Roy's detriment,
and without any rationale therefor.

Here, in contrast, prison officials acted in a manner
consistent with prison policies, rationally related to prison
safety and security interests.  This case is thus
distinguishable from Roy III, and Roy has failed to allege
sufficient facts to demonstrate that prison officials engineered
disciplinary proceedings and a SHU transfer, in retaliation for
Roy's grievances and lawsuits.  Accordingly, the court should
dismiss those claims.

### 3.   Hancock and NCF

Roy asserts a retaliation claim based on a threatened
transfer to the Hancock Building and the transfer to NCF.
Generally, a transfer of an inmate from one institution to
another "does not constitute an adverse action since a transfer
is merely an ordinary incident of prison life." Jones v.
Caruso, 421 F. App'x 550, 553 (6th Cir. 2011) (citation
omitted).  An "alleged retaliatory transfer ordinarily should be
characterized as de minimis." Id. (internal quotation marks and
citation omitted).  Courts have excepted from this general rule
"exceptional cases" in which "foreseeable, negative consequences

'inextricably follow' from the transfer," including a case in
which the transfer necessarily involved the "prisoner's loss of
his high-paying job and reduced ability to meet with his
lawyer." Id. (citation omitted); see also Hannon, 645 F.3d at
49 (transfer from medium security facility to maximum facility
in another state was adverse action). Here, the scheduled
transfer to the Hancock Building was never completed. A prison
official's consideration of or inchoate plan for a transfer to
less desirable housing, without more, asserts only a de minimis
consequence.

Roy states that he is currently housed in a safe
environment at NCF. That statement undermines his claim that
the NCF is inherently dangerous for him, and that the transfer
is thus, in itself, an actionable adverse act. Roy has not
asserted any facts suggesting that he would be unable to request
or receive accommodations to ensure his safety, if necessary.
Furthermore, Roy's allegations about limited vocational and/or
educational opportunities at NCF fail to demonstrate that the
transfer to NCF resulted in negative consequences likely to
deter an inmate of ordinary firmness from exercising First
Amendment rights. Accordingly, the court should dismiss the
claims based on the unexecuted Hancock transfer and the NCF
transfer.

4.    Remaining Retaliation Claim

As to the denial of the education center job and the NCF harassment alleged in the complaint, Roy has failed to state a plausible claim for relief.  There are no allegations suggesting that the staff members who declined to accept Roy's education center job application were aware he had engaged in any protected First Amendment activities.  Roy has additionally failed to show that the inability to obtain two education center jobs, the restriction on his ability to store his paperwork in his cell, or the ban on his access to computers at NCF are actions that would deter an inmate of ordinary firmness from pursuing grievances and lawsuits.  Accordingly, the retaliation claim based on those acts should be dismissed.

C.    Disciplinary Proceedings (Claim 3)

Roy claims that defendants involved in the February 2012 disciplinary report and plea negotiations, and the August 2012 disciplinary hearing violated Roy's right to procedural due process.  The protections of the Due Process Clause of the Fourteenth Amendment are triggered if there is a deprivation of a protected interest in life, liberty, or property.  "For a prisoner, such a deprivation occurs when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,'" Mitchell v. Horn, 318

17

F.3d 523, 531 (3d Cir. 2003) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)), or when the restraint "exceed[s] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force."  Sandin, 515 U.S. at 484.  "Lesser restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentence imposed by a court of law.'"  Mitchell, 318 F.3d at 531 (quoting Sandin, 515 U.S. at 484).

Here, Roy has not shown that any of the restraints imposed in connection with the February 2012 or August 2012 disciplinary charges exceeded the terms of Roy's prison sentence, or otherwise imposed an atypical or significant hardship upon him in relation to the ordinary incidents of prison life.  Cf. Skinner v. Cunningham, 430 F.3d 483, 487 (1st Cir. 2005) (no due process violation occurred where inmate was placed in administrative segregation for forty days during prison investigation, where isolation of inmate from other prisoners was essential to purpose of that detention); Lekas v. Briley, 405 F.3d 602, 612 (7th Cir. 2005) (34 days in discretionary segregation followed by 56 days in disciplinary segregation did not impose atypical hardship).  Accordingly, the court should dismiss the claim based on procedural issues in the disciplinary proceedings.

D.    Rumors (Claim 4)

Roy alleges that he continues to suffer consequences that
he attributes to persistent, false rumors about his past misuse
of computers, in violation of his right to due process.  Roy has
not shown, however, that any negative consequence of such rumors
constitutes an atypical or significant hardship in relation to
the ordinary incidents of prison life, or exceeded the scope of
his sentence, see Sandin, 515 U.S. at 484.  Accordingly, the
court should dismiss the due process claims concerning rumors.

E.    Grievance Process (Claim 5)

Roy alleges that, defendants' transferring him to SHU and
NCF, and investigating and prosecuting him for sexual
solicitation, limited his access to the grievance process.  Roy
points to the failure of the warden and commissioner's office to
resolve the substance of Roy's grievances, allegedly because of
the ongoing sexual solicitation investigation.  There is no
constitutional right to receive any particular response to
grievances.  Freeman v. Dep't of Corr., 447 F. App'x 385, 387
(3d Cir. 2011) ("defendants' alleged obstruction or
misapplication of these procedures is not independently
actionable").  Accordingly, Roy's claims relating to defendants'
interference with the grievance process should be dismissed.

F.   State Law Claims (Claim 6)

The remaining claims in the case are asserted under state law.  This court may decline to exercise supplemental jurisdiction over state law claims where all of the claims over which the court has original jurisdiction have been dismissed. 28 U.S.C. § 1367(a) and (c)(3).  The court recommends dismissal of all of the federal claims in this action.  Accordingly, Roy's state law claims (Claim 6) should be dismissed without prejudice to being raised in the state courts.

II.   Motion for Extraordinary Handling (doc. no. 4)

The motion for extraordinary handling requests, among other things, service of claims upon defendants and an evidentiary hearing.  Because the court now recommends dismissal of the complaint in its entirety, the motion for extraordinary handling (doc. no. 4) should be denied.

III. Motion for Preliminary Injunction (doc. no. 3)

In the August 30, 2012, report and recommendation, the court recommended that Roy's motion for a preliminary injunction be denied because of his failure to show irreparable harm.  In addition to the reasons set forth in the August 30, 2012, report and recommendation, the court now further recommends that the motion for preliminary injunction (doc. no. 3) be denied on the

basis that Roy has failed to state any federal claim upon which relief might be granted, and has thus failed to show that he is likely to succeed on the merits of the claims in this action, as is required to obtain preliminary injunctive relief.  See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Conclusion

For the foregoing reasons, the complaint (doc. nos. 1, 11, and 16) should be dismissed in its entirety.  The court should deny the motion for extraordinary handling of the pleadings (doc. no. 4), and for reasons stated in this report and recommendation and the August 30, 2012, report and recommendation (doc. no. 10), the court should also deny the motion for a preliminary injunction (doc. no. 3).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district

court; issues not preserved by such objection are precluded on

appeal).

_____
Landya McCafferty
United States Magistrate Judge

December 14, 2012

cc:  Steven J. Roy, pro se

LBM:nmd