UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Steven J. Roy</u>


     v.                            Civil No. 12-cv-303-JD
                                     Opinion No. 2013 DNH 020

<u>William Wrenn, et al.</u>


O R D E R

Steven J. Roy, proceeding pro se and in forma pauperis, filed a civil rights action against William Wrenn, Commissioner of the New Hampshire Department of Corrections; Richard Gerry, Warden of the New Hampshire State Prison; and Major Jon Fouts, New Hampshire State Prison.  On January 29, 2013, the court approved the report and recommendations issued by the magistrate judge on December 14, 2012, to deny Steven J. Roy's motion for a preliminary injunction, to deny Roy's motion for "extraordinary handling of enclosed pleadings," and to dismiss all claims. Judgment was entered the same day.  Roy seeks reconsideration.

Roy was granted an extension of time to file an objection to the December 14 report and recommendation until January 17, 2013. His objection was not filed until January 22, 2013, making it untimely.  In the meantime, the court had begun consideration of the report and recommendation, which was approved on January 29.

Despite the untimeliness of Roy's objection, the court will review the report and recommendation in light of the objection.

Roy's claims in this case are related to his claims in his four previous suits:

(1) <u>Roy v. Prison Warden</u>, No. 95-cv-0084-JM (D.N.H. filed Feb. 15, 1995) ("<u>Roy I</u>").  After Roy was convicted on a disciplinary charge of gambling based on computer printouts that were seized from him, Roy sued prison officials, arguing that the printouts related to a business he owned before his incarceration and were not evidence of gambling.  <u>Roy I</u> settled.  Roy alleges that a "computer misuse rumor" started then and continues to interfere with his job prospects and computer access in the prison.

(2) <u>Roy v. Stanley</u>, No. 02-cv-555-JD (D.N.H. filed Dec. 4, 2002) ("<u>Roy II</u>").  Roy sued prison officials for banning his use of prison computers.  The court determined that the ban resulted from a prison official's mistake about Roy's disciplinary history but granted the defendants' motion for summary judgment.  The court warned the defendants that they could avoid continued issues related to that mistake by taking measures to correct the mistake about Roy's computer use.  <u>See</u> <u>Roy II</u>, 2005 DNH 131, 2005 WL 2290276 (D.N.H. Sept. 20, 2005).  Roy now asserts that prison officials are in contempt of the September 2005 order.

(3) <u>Roy v. N.H. State Prison</u>, No. 07-cv-353-PB (D.N.H. filed Oct. 25, 2007) ("<u>Roy III</u>").  Roy sued prison officials, alleging claims for inadequate dental care and retaliation.  <u>Roy III</u> settled after Roy obtained a preliminary injunction.  <u>See</u> <u>Roy III</u>, 2008 WL 2795868 (D.N.H. July 18, 2008).  Roy now alleges that similarities between events that lead to <u>Roy III</u> and the events alleged in this case show that the prison has a "modus operandi" of using retaliatory disciplinary charges against him, in violation of his First Amendment rights.

(4) <u>Roy v. N.H. Dep't of Corrs.</u>, No. 09-cv-075-SM (D.N.H. filed Mar. 6, 2009) ("<u>Roy IV</u>").  Roy sued prison officials, alleging inadequate dental care.  <u>Roy IV</u> settled.  As a term of that settlement, the warden agreed to draft a memo addressing the computer misuse rumor.  Roy asserts in this case that the warden's memo, dated January 7, 2010, does not satisfy the September 2005 order issued in <u>Roy II</u>.

## Discussion

When a party files a written objection to a magistrate judge's proposed findings and recommendations, a judge of the court conducts "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  18 U.S.C. § 616(b)(1).  On review, the judge

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

Roy brought five federal claims under 42 U.S.C. § 1983 and two state claims, which are alleged on pages thirteen and fourteen of his amended complaint. Claim 1 alleges a federal claim of retaliation by blacklisting Roy from using computers. Claim 2 seeks a contempt order based on the September 20, 2005, order issued in Roy II. Claims 3, 4, 5, 6, and 7 are presented as follows:

> Plaintiff suffered harms to his property, his physical condition and his mental state by defendants' retaliatory moves from MCS to SHU for seven weeks and then to NCF. Exhibit N.[1]  These harms included:
>
> CLAIM #3: An attempt to prevent and/or moot the grievance process;
> CLAIM #4: Whether intentionally or negligently (State Tort) placing the plaintiff into unhealthy and unsafe conditions;
> CLAIM #5: Damaging the plaintiff's mental health by humiliating and/or embarrassing him with bizarre, false charges presented through a process where no defense was possible; damaging his reputation through a public display of the false charges; instilling paranoia in him through repeated retaliatory acts; and intentional infliction of emotional distress (State Tort);
> CLAIM #6: Facilitating the rifling of the plaintiff's legal materials and the loss of certain items therein;
> CLAIM #7: Losing and damaging the plaintiff's personal property items.

---

[1]Exhibit N is Roy's "affidavit" sworn as true "to the best of my knowledge, recollection and belief."

4

Am. Compl. docket no. 11 at 13-14.  As alleged, Roy's claims are
far from clear.

On preliminary review, the magistrate judge interpreted
Roy's amended complaint, together with his original complaint, to
allege six claims.  As interpreted, in claim one Roy alleged that
the defendants were in contempt of the September 20, 2005, order
issued in Roy II.  In claim two, Roy alleged that the defendants
violated his First Amendment rights by taking six allegedly
retaliatory actions against him: imposing a two-year ban on his
access to the North Yard; denying his Education Center job
application; scheduling his transfer to the Hancock Building;
detaining him in SHU and initiating the August 2012 disciplinary
proceedings; transferring him to the Northern Correctional
Facility; and harassing him at the Northern Correctional
Facility.  In claims three, four, and five, Roy alleged that the
defendants violated his procedural due process rights under the
Fourteenth Amendment by having a gatehouse sergeant conduct plea
negotiations, by failing to give Roy the names of his accusers,
by sanctioning him based on false rumors, and by failing to
resolve Roy's grievances.  Claim six consisted of Roy's state
claims.

The magistrate judge concluded that Roy failed to allege a
cognizable federal claim in claims one through five and

recommended dismissal of those claims.  The magistrate also recommended that the court decline to exercise supplemental jurisdiction over the state claims in claim six.

In his objection to the magistrate judge's report and recommendation, Roy challenges the standard of review used by the magistrate judge and argues that the magistrate erroneously dismissed his contempt claim, confused the factual bases for his retaliation claims, misconstrued some of his claims as due process issues, and incorrectly analyzed his claims.  Roy also asserts that references in the report and recommendation to the prison's Policies, Procedures, and Directives ("PPD") shows that the defendants had ex parte communications with the court.

With his objection, Roy filed a motion for disclosure of ex parte materials.  In his motion, Roy argued that the reference to PPD 5.19 in the report and recommendation was to materials submitted ex parte by the defendants.  The magistrate judge denied the motion because no ex parte communications occurred. Therefore, that issue need not be addressed here.


A.  <u>Standard of Review</u>

Roy argues that the magistrate judge used the wrong standard of review and failed to give a liberal interpretation to his pro se pleadings.  Roy is mistaken.

6

The standard used for preliminary review under 28 U.S.C. §§ 1915(e) and 1915A, to determine whether the complaint should be dismissed for failing to state a claim, is the same standard as is used for a motion under Federal Rule of Civil Procedure 12(b)(6).  De'lonta v. Johnson, --- F.3d ---, 2013 WL 310350, at *3 (4th Cir. Jan. 28, 2013); Davis v. Prison Health Servs., 679 F.3d 433, 437 (6th Cir. 2012).  For purposes of screening, the court construes pro se pleadings generously, Haines v. Kerner, 404 U.S. 519, 520 (1972), but the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Under the plausibility standard, the court does not consider conclusory legal allegations and conclusions. Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012).

That is the standard the magistrate judge applied.


B.  Contempt

Roy alleged that the defendants failed to comply with the order issued on September 20, 2005, in Roy II.  He relies on the following part of that order:

> To avoid continued problems arising from the circumstances of this case, the prison is put on notice that it must correct the disciplinary report on Roy pertaining to his possession of computer printouts that were mistaken for gambling activity and inform all

7

> prison staff of that correction and the prison's
> obligations under the settlement of Roy's first
> lawsuit.

2005 DNH 131, at *20-*21.  In his claim seeking a contempt order,

Roy argued that the defendants' actions are in contempt of that

order.  The magistrate judge concluded that the cited language in

the September 20, 2005, order was an admonition not a mandate,

which precluded Roy's contempt claim.  The magistrate noted that

the order lacked the specificity and mandatory terms necessary to

support contempt, citing SEC v. Hyatt, 621 F.3d 687, 692 (7th

Cir. 2010).

Roy argues in his objection that the order was unequivocal

in putting the defendants on notice and required action because

it used the word "must."  The cited part of the order merely

explains to the defendants that the disciplinary report "must" be

corrected and the staff "must" be informed of the correction and

of their obligations under the settlement in Roy's prior law suit

"[t]o avoid continued problems arising from the circumstances of

this case."  (Emphasis added.)  Therefore, the cited language

provides advice but is not mandatory and would not support a

contempt action.  See Arnonov v. Napolitano, 562 F.3d 84, 93 n.11

(1st Cir. 2009) (citing United States v. Saccocci, 433 F.3d 19,

28 (1st Cir. 2009)).

C.  Retaliation

In his objection, Roy explains that his federal claims are for retaliation by the defendants and that he did not intend to bring separate claims for due process violations under the Fourteenth Amendment.  Instead, Roy states, he included allegations of due process irregularities to support his retaliation claims.  Roy further states that Claims 3, 4, and 5, as identified in the report and recommendation, were not alleged in the complaint.  Therefore, those claims are deemed not to be part of the amended complaint and are not addressed here.

"[T]he First Amendment bars retaliation for protected speech."  Crawford-El v. Britton, 523 U.S. 574, 593 (1998); D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012).  To state a First Amendment retaliation claim, a plaintiff must allege facts to show "that (1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendants, and (3) the protected conduct was a substantial or motivating factor in the adverse action."  D.B. ex rel. Elizabeth B., 675 F.3d at 43.  An inmate filing grievances and legal actions is engaging in protected activity, and "retaliation against a prisoner's exercise of constitutional rights is actionable."  Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).

1.  <u>Blacklist</u>

In February of 2012, during a routine pat down at the
gatehouse of the North Yard of the prison, a guard discovered a
small circuit board with a switch from a cassette player in Roy's
pocket.  The device was deemed to be contraband "that did/or
could have come from the work place," and a disciplinary report
was generated on the matter.[2]  Certain restrictions were imposed
automatically because of the disciplinary report, including a
reduction in Roy's pay status for ninety days.

Later the same day, Roy was summoned to the gatehouse to
respond to the disciplinary report.  Roy alleges that Sergeant
Fontaine told Roy that he would accept Roy's guilty plea without
imposing any further sanctions than the ninety-day reduction in
pay status.  Roy pleaded guilty.  Roy further alleges that later
that day he discussed the procedure used by Sergeant Fontaine
with Lieutenant Brown who told Roy that he would look into Roy's
charge that the procedure violated the prison's protocols.

Roy alleges that when the ninety-day reduced pay status term
was almost over, Roy asked two Correctional Technology Education
Center civilian staff members about working for them outside of

_____

[2]Roy describes the disciplinary report as minor at "B
Level," while a Department of Corrections document, dated June 5,
2012, describes the disciplinary report as "Major".

the North Yard.  The staff members looked into Roy's request and then told him that he could not work with them because of a supervisor's hiring freeze.  Roy alleges that he asked the staff members for more information and also asked an inmate who worked in the Education Center and learned that a civilian supervisor in the Education Center who worked in the North Yard office said that the Education Center could not hire Roy because he had had problems working on computers in the past.

Roy asserts that the prison staff's continued reliance on the mistake about his computer use shows that the defendants are retaliating against him because of his successful litigation in Roy I.  He argues that because the court concluded in Roy II that it would not be objectively reasonable for prison officials to continue in a mistaken belief about Roy's computer use, the perpetuation of the computer misuse rumor is deliberate and is retaliatory.

Roy's blacklist retaliation claim is based on allegations of what a civilian supervisor and civilian staff members said.  The blacklist allegations do not involve any of the defendants in this case.  In addition, Roy provides no basis to infer that the civilian staff members knew of his prior litigation or would have any reason to retaliate against him.  Therefore, Roy has not alleged that he was subjected to an adverse action by the

<u>defendants</u> based on actions by the civilian staff members.  To
the extent Roy may have intended to allege that the defendants
retaliated against him by failing to dispel the computer misuse
rumor, Roy failed to allege facts to show that the defendants
were aware that the civilian staff members had heard the rumor
and were acting on it or that they spread the rumor to the
civilian staff.

As a result, the allegations in the amended complaint lack a
nexus between the comments made by the civilian staff members and
Roy's previous litigation.  Roy has not stated a retaliation
claim based on his allegations of blacklisting.

### 2.  <u>North Yard Job Ban</u>

Roy alleges that after he was told that he could not work at
the Education Center because of past problems working with
computers, he wrote to the Assistant Attorney General in the New
Hampshire Attorney General's Office who had represented the
defendants in <u>Roy III</u> and <u>Roy IV</u>.  In the letter, Roy recounted
that Education Center staff members had repeated the rumor about
his past problems using prison computers and asserted that he had
grounds to assert retaliation based on the staff members'
statements.  On June 4, 2012, a classification note indicates
that Roy's "Job Change Request for Granite COR" was denied "due

12

to past issues in the North Yard - per Major last D-Report (44B) [that] was [sic] directly related to N.Y. work on 2/22/12 - 2 yr restriction until 2/22/14."[3]

Roy contends that the employment request denial and North Yard restriction were imposed in retaliation for his letter to the Assistant Attorney General about retaliation by prison officials.  He asserts that the North Yard restriction perpetuated the earlier restrictions that were based on the false rumor of computer misuse.  Roy also contends that the restriction cannot be justified because of an ongoing security investigation under PPD 7.15.

Roy's retaliation theory ignores the fact that he pleaded guilty to a disciplinary report for having contraband in the North Yard.  Although he disputes the circumstances of his plea and the severity of the infraction, the matter was resolved against him.  Given the contraband infraction, Roy's allegations about the North Yard ban do not support an inference of retaliation against him because he wrote to an Assistant Attorney General.

---

[3]Roy attributes the classification note to Major Jon Fouts, although Fouts's name does not appear on the note and the staff person identified is Theresa Reed.

3.  <u>Housing Changes</u>

Roy alleges that he was subjected to a series of housing changes in retaliation for having filed an "antagonistic grievance," addressed to the Warden, on June 12, 2012, that threatened litigation.[4]  He alleges that he was scheduled to be moved to less desirable housing in the Hancock Building on June 28, 2012, but the Warden cancelled the move.  Five days later, Roy was moved to the prison's secure housing unit ("SHU"), and he was notified that he was being placed on Pending Administrative Review status under the Prison Rape Elimination Act.

Because Roy was not moved to the Hancock Building, he did not undergo an adverse action.  The move to SHU was made after two unidentified inmates accused Roy of soliciting them for sexual activity.  Under these circumstances, the alleged housing changes cannot support a retaliation claim.

4.  <u>False Disciplinary Charge</u>

Roy alleges that because the investigators did not identify those who accused him of soliciting sex and did not give him information about the specifics of when or where the activity

---

[4]As is mentioned above, the June 12 grievance addressed Roy's concern that he was continuing to be victimized because of the false computer misuse rumor.

occurred, he could only speculate about why he had been accused. The disciplinary report, dated July 3, 2012, filed with the amended complaint states that Roy was charged with requesting sexual activity from two other inmates, which occurred on several occasions during May and June of 2012.  The report also described the particular sexual activity Roy requested.

Roy alleges that another inmate, with whom he had had problems previously, was interested in a "bizarre topic" and asked to borrow a psychology book from Roy that explained the "topic".[5]  Roy alleges that, in relation to the charges of sexual solicitation against Roy, investigators showed Roy the book he had provided to Duquette.  Roy surmised that Duquette was involved in the accusations against him.

Roy refused the plea that he was offered on the sexual solicitation charges.  The disciplinary report was processed as a minor infraction.  A hearing was held on the charge in August of 2012, and Roy was found guilty.  Roy appealed, arguing procedural infirmities in the hearing process.  Fouts denied Roy's appeal.

Roy argues that the defendants retaliated against him by fabricating anonymous false accusations, moving him to SHU, filing a false disciplinary report, providing an insufficient

---

[5]Roy does not describe the "bizarre topic."

hearing, and attempting to move him to the Northern Correctional Facility.[6]  Allegations that prison officials fabricated false misconduct reports against an inmate, standing alone, would not state a constitutional violation.  Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (citing Sandin v. Conner, 515 U.S. 472, 475-76 (1995)).  On the other hand, allegations that prison officials brought false disciplinary charges to retaliate against an inmate for engaging in protected activity implicate the First Amendment and may state an actionable constitutional violation. See Hightower v. Vose, 1996 WL 516123, at *1 (1st Cir. Sept. 12, 1996); see also, e.g., Antoine v. Ramos, 2012 WL 6031483, at *3 (7th Cir. Dec. 5, 2012); Bonaparte v. Beck, 374 Fed. Appx. 351, 353 (3d Cir. 2010); Scott v. Stone, 254 Fed. Appx. 469, 472-73 (6th Cir. 2007); but see O'Bryant v. Finch, 637 F.3d 1207, 1212-15 (11th Cir. 2011) (dismissing retaliation claim when inmate was convicted of infraction in prison disciplinary proceedings that provided adequate due process).  The inmate must also allege circumstances to show that the defendants' actions were sufficiently adverse to "deter persons of 'ordinary firmness' from exercising their constitutional rights."  Starr v. Dube, 334 Fed. Appx. 341, 342 (1st Cir. 2009).

---

[6]At some point, Roy was moved to the Northern Correctional Facility.

For purposes of preliminary review, Roy has alleged a
retaliation claim based on the charges in the disciplinary report
dated July 3, 2012.

D.  <u>State Claims</u>

The report and recommendation does not address Roy's state
claims on the merits and instead recommended that the court
decline to exercise supplemental jurisdiction after dismissing
the federal claims.  Because one federal claim survives
preliminary review, supplemental jurisdiction cannot be declined
under 28 U.S.C. § 1367(c).  Therefore, the state claims are
considered for preliminary review.

In the amended complaint, Roy designates two claims as state
tort claims.  One claim is for intentional infliction of
emotional distress, and he supports that claim with allegations
pertaining to the allegedly false charges of sexual activity.
The other claim reads as follows: "Whether intentionally or
negligently (State Tort) placing the plaintiff into unhealthy and
unsafe conditions."

1.  <u>Intentional Infliction of Emotional Distress</u>

"In order to make out a claim for intentional infliction of
emotional distress, a plaintiff must allege that a defendant by

extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to another." Tessier v. Rockefeller, 162 N.H. 324, 341 (2011) (internal quotation marks omitted). Conduct that would support a claim of intentional infliction of emotional distress must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (internal quotation marks omitted).

Roy alleges that the defendants falsely accused him of soliciting and engaging in bizarre sexual activity with other inmates and made those charges public in the prison. He further alleges that the defendants made the false charges to retaliate against him for his prior litigation and for filing grievances about the continuation of the false rumor of his misuse use of computers. Taking those allegations as true, Roy has stated a claim for intentional infliction of emotional distress.

### 2.  Negligent or Intentional Conduct

Roy alleges that the defendants acted negligently or intentionally in subjecting him to unhealthy and unsafe conditions but does not indicate what conditions are at issue. In the amended complaint, Roy alleges that "the SHU conditions

18

were abysmal, with extreme heat and lack of reading material
interrupted by frequent raw sewage floods." Roy does not
indicate whether or not those allegations are the factual basis
for his negligent or intentional conduct claim, does not indicate
whether he was harmed by heat or sewage, and does not provide
factual allegations about how the defendants were negligent or
acted intentionally in causing those conditions.

As pleaded, Roy has not provided a sufficiently clear
factual basis for his negligent or intentional conduct claim to
survive preliminary review.


<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion for
reconsideration (document no. 26) is granted.  The court has
considered the plaintiff's objection (document no. 23) for
purposes of reviewing the report and recommendation (document no.
19).

The judgment entered on January 29, 2013, is vacated.

The order issued on January 29, 2013, (document no. 24) is
vacated, in part, as to the decision to approve and adopt the
recommendation to dismiss all of the federal claims and to
decline supplemental jurisdiction as to the state claims.

19

The report and recommendation (document no. 19) is approved and adopted to deny the motion for extraordinary handling of pleadings (document no. 4) and motion for a preliminary injunction (document no. 3).

As is discussed in this order, the plaintiff's federal claim under 42 U.S.C. § 1983 that the defendants retaliated against him in violation of the First Amendment by initiating a false disciplinary charge against him and finding him guilty on the charge without required due process is allowed.  The plaintiff's state claim of intentional infliction of emotional distress is also allowed.

All other claims in the amended complaint are dismissed under § 1915(e)(2) and 1915A for the reasons stated in this order.

The Clerk's office is directed to serve the New Hampshire Office of the Attorney General, as is provided in the Agreement on Acceptance of Service, copies of this order and the amended complaint (document no. 11).  Within thirty days from receipt of these materials, the Office of the Attorney General will submit an Acceptance of Service notice to the court, specifying whether each defendant has authorized the Office of the Attorney General to receive service on his behalf.  When Acceptance of Service is filed, service will be deemed made on the last day of the thirty-

day period.  If any defendant does not authorize the Office of
the Attorney General to receive service on his behalf or if the
Office of the Attorney General declines to represent any
defendant, the Office of the Attorney General shall, within
thirty days from receipt of copies of this order and the amended
complaint, provide to the court the last known address for that
defendant.

The defendants are instructed to answer or otherwise plead
within twenty-one days of service.  See Fed. R. Civ. P.
12(a)(1)(A).

Plaintiff is instructed that all future pleadings, written
motions, notices, or similar papers shall be served directly on
the defendants by delivering or mailing the materials to the
defendants or their attorney(s), pursuant to Federal Rule of
Civil Procedure 5(b).


SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

February 13, 2013

cc:  Steven J. Roy, #68033

21